IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| LISA A. HAMILTON ) | |
| ) | Case No. 3:25-cv-00785 |
| v. ) | |
| ) | |
| FRANK BISIGNANO, *Commissioner of the* ) | |
| *Social Security Administration* ) | |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

Plaintiff Lisa Hamilton filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 11) and memorandum in support (Docket No. 12), to which Defendant SSA has responded (Docket No. 14). This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 13.) Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 11) be **DENIED**.

### I.     INTRODUCTION

On November 5, 2018, Plaintiff filed an application for DIB. (Transcript of the Administrative Record (Docket No. 9) at 15).[1] In her application, Plaintiff asserted that, as of the alleged onset date of March 14, 2018, she was disabled and unable to work due to the following

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

physical or mental conditions: headaches, degenerative disc disease, facet arthritis, high blood pressure, stenosis, sciatica, and a bulging disc at L5-S1. (AR 322.)[2]

The claim was denied initially on May 3, 2019 (AR 109–10) and upon reconsideration on August 15, 2019 (AR 128). On May 28, 2021, Administrative Law Judge ("ALJ") Michael E. Finnie held a telephonic hearing at which Plaintiff appeared with counsel and testified. (AR 32–58.) On June 21, 2021, ALJ Finnie denied Plaintiff's claim. (AR 15–26.) On May 17, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–7.) Plaintiff then commenced a civil action in this Court pursuant to 42 U.S.C. § 405(g) and moved for judgment on the administrative record. (AR 901–05.) On May 9, 2023, this Court granted Plaintiff's motion and remanded the case for further proceedings. (AR 906–31.) Specifically, the Court found that the ALJ erred in his consideration of opinion evidence because he had not "sufficiently articulated his reasoning" to show how the opinion evidence led him to conclude that the opinions were not persuasive. (AR 917–24.)

On October 25, 2023, the Appeals Council remanded the case "for further proceedings consistent with the Order" of the District Court. (AR 934–38.) On May 15, 2024, ALJ Jennifer Thomas held an in-person hearing at which Plaintiff appeared with counsel and testified. (AR 839–71.) On June 17, 2024, ALJ Thomas denied Plaintiff's claim. (AR 821–31.) On June 4, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (AR 811–14.) Plaintiff then timely commenced this civil action pursuant to 42 U.S.C. § 405(g).

---

[2] Plaintiff originally alleged an onset date of March 9, 2018. However, during her hearing on May 28, 2021, Plaintiff requested that the onset date be amended to March 14, 2018, which the ALJ accepted. (AR 37.)

## II. THE ALJ'S FINDINGS

In her June 17, 2024 decision, the ALJ included the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of March 14, 2018 through her date last insured of December 31, 2019 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, hypertension, chronic kidney disease, and a history of migraine headaches (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant would have needed the opportunity to alternate, and this would have been between sitting, standing, and/or walking, in thirty-minute intervals and this would have been performed at the workstation; the changing of positions would not have led to off task behavior. The claimant could have frequently pushed and pulled using the upper extremities and this would have included the operation of hand controls. The claimant could also have frequently pushed and pulled using the lower extremities and this would have been for the operation of foot controls. The claimant could have occasionally climbed ramps and stairs; never have climbed ladders, ropes, scaffolding; occasionally have stooped, kneeled, crouched, balanced; never have crawled. The claimant could have frequently reached overhead and all around using the upper extremities; could have frequently handled, fingered, and felt using the upper extremities; could not have had any exposure to temperature extremes; no exposure to concentrated atmospheric conditions as defined by the *Selected Characteristics of Operations* (SCO)/*Dictionary of Occupational Titles* (DOT); no exposure to concentrated vibrations; no exposure to unguarded moving mechanical parts or unprotected heights; and the claimant could not have operated a motor vehicle.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 22, 1965 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 14, 2018, the amended alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(AR 824–31.)

### III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A.  Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and

5

determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B.     The ALJ's Five-Step Evaluation of Plaintiff**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period of March 14, 2018, her alleged onset date, to December 31, 2019, her date last insured. (AR 824.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, hypertension, chronic kidney disease, and a history of migraine headaches. (AR 824.) Nevertheless, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 825.) At step four, the ALJ determined that Plaintiff had the RFC to perform light work with certain manipulative, postural, and environmental limitations. (AR 825–30.) Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including marker, mail clerk, and router. (AR 830–31.) Therefore, the ALJ concluded that Plaintiff had not been under a disability at any time from March 14, 2018 to December 31, 2019. (AR 831.)

**C.     Plaintiff's Assertion of Error**

Plaintiff sets forth two assertions of error: (1) the ALJ failed to adequately weigh and consider opinion evidence in assessing Plaintiff's RFC; and (2) the ALJ improperly discounted Plaintiff's credibility. (Docket No. 12 at 11–18.) Plaintiff asks the Court to either reverse the decision of the SSA or remand the matter back to the SSA for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). (*Id.* at 18–19.)

1. **The ALJ's Consideration of the Opinion Evidence**

With respect to her RFC, Plaintiff asserts that the ALJ erred because he failed to "discuss the medical opinion evidence in terms of both supportability and consistency as required by the regulations and the interpreting case law." (Docket No. 12 at 13.) When evaluating medical opinion evidence, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include: (1) supportability, (2) consistency, (3) the provider's relationship with the claimant, (4) the provider's specialization, and (5) other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).

The first and second factors, supportability and consistency, are the "most important" in a "persuasiveness" analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two factors have been described as follows:

> In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. . . . Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to "other medical and nonmedical sources."

*Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio September 12, 2023) (citations omitted).

These two most important factors – supportability and consistency – must be explained, while the other three factors may be explained. *Id.* § 404.1520c(b)(2). To determine the

7

persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

In her decision, ALJ Thomas considered and determined the persuasiveness of four medical opinions: (1) consultative examiner Dr. Roy Johnson, M.D.'s April 22, 2019 opinion; (2) provider Dr. Roger McKinney, M.D.'s December 4, 2016 opinion; (3) state agency consultant Dr. Ok Yung Chung, M.D.'s May 3, 2019 opinion; and (4) state agency consultant Dr. Kanika Chaudhuri, M.D.'s August 15, 2019 opinion. (AR 828–29.) The ALJ found the opinions of Dr. Chung and Dr. Chaudhuri, the state agency consultants, to be persuasive, but found the opinions of Dr. Johnson and Dr. McKinney to *not* be persuasive. Plaintiff takes issue with the ALJ's consideration of all four opinions.

### i.  *Dr. Johnson*

In his April 2019 opinion, consultative examiner Dr. Johnson concluded that Plaintiff could occasionally lift and/or carry 15 pounds because of tenderness in her low back and a decreased range of motion; had no sitting restrictions; and could stand or walk for at least three hours during an eight-hour workday with normal breaks. (AR 731.)

The ALJ did not find this opinion to be "nearly as persuasive" as the opinions of the state agency consultants because the ALJ thought this opinion was incomplete or equivocal; too heavily based on Plaintiff's subjective self-reports and complaints; and not consistent with the record as a whole. (AR 829.) With respect to supportability, the ALJ noted that Dr. Johnson opined on how much Plaintiff could lift or carry on an occasional basis, but did not opine about her ability on a frequent basis. The ALJ also critiqued Dr. Johnson's opinion of Plaintiff's ability to stand and walk for "at least three hours," which the ALJ felt was "vague" and did not express the "*most*" Plaintiff could do in an eight-hour workday. The ALJ also stated that a three hour limitation seemed "arbitrary" given that "two hours or six hours are the standard requirement for the full range of all exertional levels." With respect to consistency, the ALJ criticized Dr. Johnson's lack of citation or explanation for his finding that Plaintiff was limited in her ability to stand or walk, which the ALJ found to be inconsistent with Dr. Johnson's own examination wherein Plaintiff demonstrated an unremarkable gait and station. The ALJ also noted that the record did not reveal any gait abnormalities since the alleged onset date and even after the date last insured.

Plaintiff argues that the ALJ did not adequately discuss the supportability of Dr. Johnson's opinion and failed to discuss the consistency of the opinion at all. (Docket No. 12 at 14.) For supportability, Plaintiff takes issue with the ALJ's description of Dr. Johnson's standing and walking limitation of three hours as "arbitrary." Plaintiff argues that the ALJ failed to explain why

the limitation was arbitrary, cite evidence to show that the limitation was arbitrary, or discuss whether the limitation was too high or too low. However, the ALJ did provide an explanation. She stated that this limitation to three hours was vague and failed to express the most that Plaintiff could do. Although the ALJ's remark about the limitation being "arbitrary" reads as somewhat of an aside, it does provide the Court with an understanding of why the ALJ felt that this limitation was not supportable: it did not correspond to the standard requirements of either sedentary or light work. In other words, the duration of the limitation indicated to the ALJ that Dr. Johnson did not have a strong justification for the limitation.

Plaintiff also criticizes the ALJ's discussion of her gait. She argues that Dr. Johnson referenced many abnormalities, including an unsteady tandem walk, difficulty balancing, and tenderness in her spine in his opinion, which renders his opinion more persuasive. However, Dr. Johnson's opinion plainly states that Plaintiff's gait was "unremarkable." (AR 731.) In other words, the ALJ's observation that Plaintiff's gait was not abnormal is supported by evidence in the record. Further, the ALJ discussed medical record evidence wherein Plaintiff was noted to be unsteady when tandem walking. (AR 827.) Although there may be indications in Dr. Johnson's opinion and elsewhere in the record that Plaintiff's ability to walk was restricted in some way, the Court is limited to determining whether substantial evidence supported the ALJ's RFC. That substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406. Accordingly, the existence of some contrary or conflicting evidence in the record does not render the ALJ's opinion unsupported.

Finally, with respect to consistency, the ALJ did compare Dr. Johnson's opinion to other evidence in the record, despite Plaintiff's assertion to the contrary. As stated above, the ALJ

compared Dr. Johnson's standing and walking limitations to other records indicating that Plaintiff did not have abnormalities. This is enough to allow the Court to understand why the ALJ felt that Dr. Johnson's opinion was not consistent with certain portions of the record.

Overall, the Court finds that the ALJ provided a sufficient explanation of the supportability and consistency of Dr. Johnson's opinion. It is clear that the ALJ found that both the statements or findings in Dr. Johnson's opinion and the other evidence in the record contradicted, or at least weakened, Dr. Johnson's opinion, which rendered the opinion less persuasive to the ALJ.

### ii. *Dr. McKinney*

In his December 2016 opinion, provider Dr. McKinney concluded that Plaintiff could lift and/or carry up to 20 pounds occasionally; sit for six hours in an eight-hour workday; stand and/or walk for two hours each in an eight-hour workday; ambulate for 100 yards without the use of a cane; frequently use both hands; occasionally climb stairs and ramps; and occasionally balance. (AR 566–72.)

The ALJ did not find this opinion to be "very persuasive" because she believed it was incomplete or equivocal; too heavily based on Plaintiff's subjective self-reports and complaints; and not consistent with the record as a whole. (AR 829.) The ALJ noted that Dr. McKinney's December 2016 opinion was provided over a year before Plaintiff's alleged onset date of March 2018, so Dr. McKinney had little actual knowledge of Plaintiff's ability to perform basic work activities as of the alleged onset date. The ALJ also noted that Plaintiff stopped treating with Dr. McKinney in January 2018. With respect to supportability, the ALJ felt that Dr. McKinney's opinion was too heavily based on Plaintiff's subjective complaints rather than objective medical findings, and, in fact, Dr. McKinney noted that the limitations in his opinion were "based on information given by patient." The ALJ also noted that Dr. McKinney's opinion on Plaintiff's cane

11

usage was conflicting – he opined that a cane was not medically required but also that Plaintiff could only walk a certain distance with a cane. With respect to consistency, the ALJ felt that his opinion was contradicted by the record. For example, the ALJ noted that there were no references in the record to Plaintiff using a cane and that Plaintiff herself testified that she did not use a cane or any other ambulatory device.

Plaintiff argues that the ALJ failed to indicate which parts of the record were inconsistent with Dr. McKinney's statements, specifically with respect to his allegedly conflicting statements regarding Plaintiff's need for a cane. (Docket No. 12 at 14–15.) However, there is no requirement that an ALJ compare and contrast each portion of a medical opinion with other evidence in the record. Rather, the ALJ must substantively consider whether the medical opinion is supportable and consistent. Here, the ALJ sufficiently explained why she found Dr. McKinney's opinion to not be persuasive. She found the opinion to contain conflicting information regarding Plaintiff's need for a cane, and she found the opinion to be out of line with other medical record evidence that did not reference cane usage. Furthermore, the ALJ did, in fact, "indicate what parts of the record these statements are inconsistent with." (Docket No. 12 at 15.) She pointed to Plaintiffs' hearing testimony that she had never used a cane. (AR 829.) Accordingly, the Court finds that the ALJ sufficiently explained the supportability and consistency of Dr. McKinney's opinion. The ALJ believed that the statements or findings in Dr. McKinney's opinion and other evidence in the record contradicted, or at least weakened, Dr. McKinney's opinion, which rendered the opinion less persuasive to the ALJ.

### iii. Dr. Chung, Dr. Chaudhuri

In their opinions, state agency consultants Dr. Chung and Dr. Chaudhuri concluded that Plaintiff could perform a range of light work. (AR 101–08, 119–24.) In his May 3, 2019 opinion,

12

Case 3:25-cv-00785   Document 16   Filed 02/24/26   Page 12 of 19 PageID #: 1232

Dr. Chung found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours each in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently reach, handle, finger, and feel. (AR 103–04.) In her August 14, 2019 opinion, Dr. Chaudhuri affirmed these limitations. (AR 120–22.) The ALJ found these two opinions to be persuasive because they were "well supported by objective medical findings" and "consistent with the record as a whole," including ALJ Finnie's 2021 RFC finding. (AR 828.) The ALJ stated that she "further reduced" Plaintiff's RFC based on her hearing testimony so she would be able to alternate positions every thirty minutes. (AR 828–29.)

Plaintiff argues that the ALJ failed to point to specific evidence in the record to explain why she found these opinions to be supportable or consistent. (Docket No. 12 at 13.) Although it is true that the ALJ did not directly compare these opinions to other evidence from the record, the ALJ provided a thorough discussion of Plaintiff's medical records, which allows the Court to meaningfully review the ALJ's consistency findings. This included a discussion of Plaintiff's lab results, blood pressure, gait and squatting ability, back pain, visual acuity, hearing, depression, and more, as further discussed below. (AR 827–28.) In addition, the ALJ modified Plaintiff's RFC to account for Plaintiff's hearing testimony so that Plaintiff would be able to alternate positions every thirty minutes. (AR 825 ("The claimant would have needed the opportunity to alternate, and this would have been between sitting, standing, and/or walking, in thirty-minute intervals and this would have been performed at the workstation; the changing of positions would not have led to off task behavior.").)

Accordingly, although the ALJ's discussion of the state agency consultants' opinions is less robust than her discussion of Dr. Johnson and Dr. McKinney's opinions, the Court

13

nevertheless finds that the ALJ provided a "logical bridge" between the state agency consultants' conclusions and the ALJ's finding that their opinions were persuasive. *See Collier*, 2018 WL 2193965, at * 2. The ALJ properly articulated her supportability and consistency analysis as required in 20 C.F.R. § 404.1520c. For these reasons, the Court rejects Plaintiff's first assertion of error.

### 2. The ALJ's Consideration of Plaintiff's Credibility

Plaintiff also asserts that the ALJ failed to properly consider her statements about her limitations. (Docket No. 12 at 16–18.) She argues that the ALJ wrongly cherry picked evidence from the record that showed normal or unremarkable results in order to discount Plaintiff's complaints of pain and depression. She also argues that the ALJ improperly considered her lack of treatment when assessing her credibility.

"An individual's statements as to pain or other symptoms will not alone establish that [she is] disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation omitted) (cleaned up). Rather, when an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process. SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms. *Id.* at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.*

at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at *7–8.

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important. If an individual's statements are *consistent* with the objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if an individual's statements are *inconsistent* with the objective medical evidence, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations);

15

*Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle"). A credibility assessment is firmly within the ALJ's discretion and not to be decided anew by a reviewing court. *Vaughn v. Berryhill*, No. 3:16–cv–02821, 2018 WL 632377, at *6 (M.D. Tenn. Jan. 11, 2018). It is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (quoting *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003)). A reviewing court will not disturb an ALJ's credibility finding "absent compelling reason." *Id.* (quoting *Smith v. Comm'r*, 307 F.3d 377, 379 (6th Cir. 2001)).

The Court finds that the ALJ's determination concerning the consistency of Plaintiff's allegations is supported by substantial evidence. *See Walters*, 127 F.3d at 531 ("[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence.") (citation omitted). In her decision, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 826.) The ALJ recounted Plaintiff's hearing testimony, where she stated that she suffered from several headaches per week; experienced sweating and vomiting; and had significant difficulty sitting, standing, walking, lifting, bending, kneeling, squatting, climbing stairs, reaching, using her hands, seeing, hearing, paying attention, remembering, following spoken instructions, dealing with stress, handling changes in routine, and sleeping. (AR 826.) However, the ALJ found that the record contained very little objective medical evidence and treatment between the alleged onset date and date last insured, which led to her conclusion that Plaintiff's statements were not consistent with the record. (AR 827.)

Nevertheless, the ALJ examined several of Plaintiff's medical records from the relevant time period. For example, the ALJ pointed to laboratory testing from June 7, 2018, April 10, 2019,

16

and April 18, 2019 that showed elevated serum creatinine levels and depressed estimated glomerular filtration rates, all of which would be consistent with chronic kidney disease. (AR 827.) However, the ALJ also pointed to laboratory testing from September 20, 2018 and July 10, 2019 that showed results consistent with normal kidney functioning. (AR 827.) The ALJ also discussed a consultative physical examination from April 22, 2019 that showed a minimally elevated blood pressure reading, reduced range of motion of the lumbar spine, tenderness to palpation at the L4-5 paraspinal area, diffuse wheezes, unsteady tandem walking, and an inability to balance on each foot. (AR 827.) Otherwise, the ALJ described the consultative physical examination and other physical examinations as "unremarkable," and found Plaintiff's blood pressure readings to regularly be "within normal limits." (AR 827.) Further, the ALJ wrote that the record indicated that treatment records showed that Plaintiff's back pain and headaches were not as intense or frequent as she claimed. (AR 828.) Finally, the ALJ found no treatment records concerning Plaintiff's depression, aside from a note that Plaintiff was prescribed medication that appeared to effectively treat her depressive symptoms. (AR 828.)

> Accordingly, the ALJ concluded:
>
> Therefore, while the undersigned certainly does not doubt that the claimant's ability to perform basic physical work activities was more than minimally limited through the date last insured, the record contains very little, if any, evidence showing they were more limited than the prior Administrative Law Judge found on March 13, 2018.
>
> * * *
>
> Therefore, while the undersigned certainly does not doubt that the claimant experienced some depressive symptoms, the record certainly does not contain objective medical evidence show the claimant's ability to perform basic mental work activities was more than minimally limited for a period of 12-consecutive months through the date last insured.

(AR 828.)

Plaintiff argues that the ALJ cherry picked the record to find "normal" or "unremarkable" examination results to discount Plaintiff's complaints of pain. (Docket No. 12 at 17.) She contends that the ALJ erred by focusing on "isolated words and example of activities taken out of context." (*Id.*) However, Plaintiff does not provide the Court with any examples of this alleged cherry picking or point to evidence in the record to contradict the ALJ's findings. As set forth above, the ALJ cited medical records that indicated that Plaintiff had abnormal laboratory results, a reduced range of motion, unsteady walking, and an inability to balance, among other issues. In other words, the ALJ clearly reviewed Plaintiff's medical records and did not mention only those records that were "normal" or "unremarkable." Further, merely pointing out the existence of irregular or remarkable test results and examination notes is insufficient to show that the ALJ's decision lacks substantial evidence.

Accordingly, the ALJ sufficiently reviewed the "objective medical record evidence" and concluded that Plaintiff's testimony concerning her symptoms was not consistent with the record. Given the sufficiency of the ALJ's consideration of Plaintiff's testimony and the "great weight and deference" that is afforded to an ALJ's credibility assessment, the Court finds that the ALJ's consideration of Plaintiff's disabling symptoms is supported by substantial evidence. For these reasons, the Court rejects Plaintiff's second assertion of error.

In sum, because substantial evidence supports the ALJ's finding that Plaintiff had the RFC to perform light work with certain manipulative, postural, and environmental limitations, the Court affirms the ALJ's decision, even if there is some evidence in the record to demonstrate otherwise. *Blakely*, 581 F.3d at 406. Because "weighing conflicting evidence [is] properly within the ALJ's role," the Court finds no error in the ALJ's assessment of Plaintiff's RFC, including the

consideration of medical opinion evidence and Plaintiff's credibility. *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *7 (6th Cir. June 12, 2024).

## V. RECOMMENDATION

For the above stated reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for judgment on the administrative record (Docket No. 11) be **DENIED** and the Social Security Administration's decision be **AFFIRMED**.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,
**Signed By:**
***J. Gregory Wehrman***
**United States Magistrate Judge**